UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PIA CRUZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21-CV-06794 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| ROBERT BOSCH AUTOMOTIVE, ) | |
| STEERING, LLC, and ) | |
| ROBERT BOSCH, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Pia Cruz, a citizen of Illinois, filed an Illinois state-court case against Robert Bosch Tool Corporation (Bosch Tool), Robert Bosch Automotive Steering, LLC (Bosch Steering), and Robert Bosch, LLC (Bosch LLC), alleging that they failed to deduct money from an employee's income in contravention of a child-support order. R. 1-1, Compl.[1] The Defendants then removed the case to federal court under diversity jurisdiction, arguing that Bosch Tool—an Illinois corporation—had been fraudulently joined. R. 1, Notice of Removal. Cruz agreed to dismiss Bosch Tool. R. 9, Joint Jurisdictional Mem. at 2; R. 10, Minute Entry (Jan. 19, 2022). But now Cruz argues that (1) Robert Bosch North American (Bosch NA), the parent company of the two remaining Defendants, might be a citizen of Illinois (which would nullify diversity jurisdiction); and (2) alternatively, the domestic-relations exception deprives this Court of

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

jurisdiction. R. 15, Pl.'s Resp. at 1. The Defendants respond that Bosch NA is not an Illinois citizen for purposes of diversity jurisdiction, and that the domestic-relations exception does not apply. R. 11, Defs.' Jurisdictional Mem. The Defendants are correct: for the reasons explained in this opinion, subject matter jurisdiction is secure.

## I. Background

On November 10, 2020, an Illinois state court ordered Chad Clay to pay child support to Cruz for their minor child. Compl. ¶ 1. The state court ordered Bosch Steering, Clay's employer, to deduct $725.50 per month from Clay's paychecks. *Id.* ¶ 6. But Bosch Steering did not comply with the income-withholding order, resulting in this lawsuit. *Id.* ¶¶ 24–49.

### A. Jurisdictional Facts

With that background in place, it is necessary to lay out the undisputed facts relevant to diversity jurisdiction. Bosch Steering is a single-member limited liability company; the single member is Bosch LLC. Notice of Removal ¶ 7. Bosch LLC, in turn, is owned by Bosch NA, which is a corporation incorporated in Delaware. *Id.* ¶¶ 8–9. In arguing that Bosch NA's principal place of business is in Michigan, the defense points out that most of Bosch NA's directors and executives are based in Farmington Hills, Michigan. R. 11-1, Defs.' Jurisdictional Decl. ¶¶ 5–8. In particular, of Bosch NA's four directors, three maintain their offices in and work from Farmington Hills. *Id.* ¶¶ 5–6. The fourth, Markus Heyn, who is the Chair of the Board, works from Germany. *Id* ¶ 6. Aside from the board's directors, Bosch NA's executive leadership—specifically, its President, CFO, General Counsel-Secretary, and Assistant

2

Secretary—work from Farmington Hills. *Id.* ¶¶ 7–8. Outside of Michigan, Bosch NA maintains a tax administrative support function in Illinois, which includes the company's Treasurer and two Assistant Treasurers. *Id.* In addition, in 2019, Bosch NA— or one of its subsidiaries—leased a 110,000 sq. ft. office space in Illinois. Joint Jurisdictional Mem. at 2.

### B. Procedural History

Given those jurisdiction-related facts, the Court provided Cruz the opportunity to elaborate on her argument that Bosch NA might be a citizen of Illinois, which, if true, would thwart complete diversity. Minute Entry (Jan. 19, 2022). In response, Cruz contends that extensive jurisdictional discovery is needed to find out if Bosch NA's directors and executives work "in one or more locations given they are being compensated for their work by/for other affiliated entities." Pl.'s Resp. at 1–2. Otherwise, she does not dispute the veracity of the jurisdictional facts provided by Defendants. *Id.* On the domestic-relations exception, the Court also provided the parties the opportunity to raise any substantive arguments about the interpretation of the child-support order. Minute Entry (Jan. 19, 2022); R. 3, Minute Entry (Dec. 27, 2021). The Defendants informed the Court they will not challenge the child support order and do not intend to argue that the order "should be modified or vacated." Defs.' Jurisdictional Mem. at 3. Instead, the Defendants might argue that service of the child-support and income-withholding orders was improper; that Michigan law—not Illinois

law—governs the enforcement of the orders and consequences for non-compliance; and that Bosch Steering's failure to comply was not willful or intentional. *Id.*

## II. Legal Standard

Removal of a state-court action to federal court is governed by 28 U.S.C §§ 1441 and 1446. Section 1441(a) generally authorizes parties to remove state cases to federal court so long as the case could have been filed in federal court in the first place. Section 1446 sets forth the procedure for removal. Like the text governing pleadings under Federal Rule of Civil Procedure 8(a), Section 1446(a) requires only a "short and plain statement" describing the grounds for removal. But removal can be challenged. If it is, then the party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (cleaned up).[2]

## III. Analysis

### A. Complete Diversity

Cruz argues that Bosch NA's principal place of business might be in Illinois. Pl.'s Resp. at 1–2. If true, complete diversity would be thwarted—Cruz is an Illinois citizen—and the case would have to be remanded to state court.

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Diversity jurisdiction is governed by 28 U.S.C. § 1332. Where, as here, the removing parties (the Defendants) invoke diversity jurisdiction, the Defendants must demonstrate complete diversity of citizenship and an amount-in-controversy exceeding $75,000. 28 U.S.C. § 1332(a). Neither party contests the amount-in-controversy, and it is readily satisfied on the alleged facts,[3] so the only issue is whether there is complete diversity. Complete diversity must exist "both at the time of the original filing in state court and at the time of removal." *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016) (cleaned up). For natural persons, state citizenship is determined by where the person is domiciled. *Id.* A corporation is considered a citizen of its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). A corporation can only have a single principal place of business. *Metro. Life Ins. Co. v. Est. of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991).

To determine the principal place of business, federal courts apply the nerve-center test. *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986). The nerve center is a corporation's "brain and [is] synonymous with its executive headquarters." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 573 (7th Cir. 2021) (cleaned up). Applying that test to the facts, it

---

[3]The $75,000 amount-in-controversy requirement is satisfied because Cruz seeks to recover $207,800 for statutory damages and $8,036 in child support owed. Compl. at 11; *Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (re-emphasizing that amount-in-controversy is satisfied unless it is "legally impossible" for plaintiff to recover that amount).

is clear that Bosch NA's nerve center is *not* in Illinois. Only its tax administrative support function, which includes its Treasurer and two Assistant Treasurers, is located here in Illinois. Defs.' Jurisdictional Decl. ¶ 8. Conversely, the company's top executives work in Michigan—the President, CFO, and General Counsel. *Id.* ¶¶ 7–8. Also, three out of four board directors maintain offices in Michigan. *Id.* ¶ 6. And although Chairman-of-the-Board-and-executive-director Markus Heyn does not work in Michigan, he works in Germany—not Illinois. *Id.* ¶¶ 6, 8.

Given the concentration of Bosch NA's key decisionmakers in Michigan, that state constitutes the nerve center of the corporation and its principal place of business. What's more, Cruz does not substantively dispute the jurisdictional facts proffered by the Defendants (and supported with evidence) about the location of Bosch NA's board members and executives. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Cruz only speculates—without more—that Bosch NA's directors and executives might work for the corporation's affiliates in other places outside of Michigan. Pl.'s Resp. at 1–2. But again, what matters is not the work for corporate affiliates, but rather where directors and executives make decisions, as well as exercise control and coordination for the party-corporation. *Big Shoulders Cap. LLC*, 13 F.4th at 573. From the undisputed jurisdictional facts, that place is Michigan.[4] No jurisdictional discovery is warranted. There is complete diversity between the parties.

---

[4]Cruz seems to argue that it is relevant that Bosch NA–perhaps through its subsidiaries–has significant operations in Illinois. Joint Jurisdictional Mem. at 2. She highlights a

## B. Domestic-Relations Exception

Cruz's second argument is that the domestic-relations exception deprives this Court of jurisdiction because the dispute pertains to child-support enforcement—a domestic-relations matter reserved for state courts. Pl.'s. Resp. at 2–3. In response, the Defendants contend that the exception does not apply because the defense will not contest the validity and enforceability of the child-support and income-withholding orders. Defs.' Jurisdictional Mem. at 1–3.

The domestic-relations exception dates back to 1858, when the Supreme Court declared (at that time without explanation or citation) that federal courts lack jurisdiction to hear divorce or alimony cases. *Barber v. Barber*, 62 U.S. 582, 584 (1858). Then, after the lower courts had consistently applied the rule for over 130 years, the Court offered a more detailed rationale for the exception in *Ankenbrandt v. Richards*, 504 U.S. 689, 690 (1992). The domestic-relations exception to federal courts' jurisdiction is not grounded in Article III, Section 2 of the Constitution, the Supreme Court explained, but in Article I, together with Article III, Section 1. *Id.* at 697. Article I gives Congress the authority to create federal courts "inferior to the supreme Court." And under Article III, Section 1, "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from

---

lease of office space in Illinois, for example. *Id.* But as explained in the text, the presence of significant business activities and operations in a state does not demonstrate citizenship. Here, another state—Michigan—boasts the lion's share of directional and executive decision-making. *Big Shoulders Cap. LLC*, 13 F.4th at 573. This is what determines a corporation's principal place of business.

time to time ordain and establish." The Supreme Court's cases have long held that inferior courts do not have the same jurisdiction as the Supreme Court, but only the jurisdiction that Congress vests in them. *Ankenbrandt*, 504 U.S. at 697–98. Ultimately, *Ankenbrandt* concluded that because the courts had been applying the domestic-relations exception for over a century, and Congress had never instructed them to do otherwise—including when amending the diversity-jurisdiction statute in 1948—Congress in effect had adopted the domestic-relations exception to diversity jurisdiction. *Id.* at 700–01.

With the exception itself in place, the Seventh Circuit has interpreted the domestic-relations exception to consist of "a core and a penumbra." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). At the core are cases in which plaintiffs seek "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Id.* In the penumbra of the core are "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id.* The exception divests the federal court of jurisdiction because it recognizes that federal courts are less suited to determine alimony, custody, visitation, and child-support disputes. *See Ankenbrandt*, 504 U.S. at 704; *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir. 1982). The exception is "construed narrowly, with a focus on the need to prevent federal courts from disturbing or affecting the possession of property in the custody of a state court." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)

(cleaned up). Thus, actions for enforcing alimony "are outside the diversity jurisdiction if the decree remains subject to modification." *Lloyd*, 694 F.2d at 492 (cleaned up).

Here, however, the Defendants are not challenging or seeking to modify the child-support and income-withholding orders issued to Bosch Steering. *See* Defs.' Jurisdictional Mem at 3. Instead, they plan on challenging the propriety of *service* of the orders. *Id.* The defense also plans to argue that Michigan law, as opposed to Illinois law, controls the procedural aspects of the child-support order, and consequently that Michigan law "governs the consequences of any alleged non-compliance with the child support order." *Id.* On these arguments, Cruz responds that Illinois law governs the orders, and thus that *Illinois* law should be used in determining any penalties for non-compliance by Defendants. Pl.'s Resp. at 2–3. But the parties are getting ahead of themselves.

Whether Illinois or Michigan law applies to the enforcement of the orders does *not* implicate the domestic-relations exception. That is because the Court is not being asked to interpret or to modify the child-support and income-withholding orders. *See, e.g.*, *Kowalski*, 893 F.3d at 996 (explaining that exception did not apply because plaintiff was not seeking "to alter an *in rem* custody award or to undo a divorce decree"); *Sheetz v. Norwood*, 608 F. App'x 401, 404 (7th Cir. 2015) (explaining that the domestic-relations exception was not implicated in a lawsuit against the government for failing to protect the plaintiff from abuse by his father because the plaintiff "can pursue those claims without asking to set aside the state court's orders"). The Court will

9

not, for instance, review the amount of child support owed, the duration of the obligation, or the monthly withholding ordered. It will only determine questions about service of the order, intentionality of the alleged violations, and choice of law. *See* Defs.' Jurisdictional Mem at 3. Those issues are squarely within this Court's jurisdiction. Hence, the domestic-relations exception does not apply.

## IV. Conclusion

For the reasons discussed in this Opinion, the Court concludes that there is no basis for jurisdictional discovery, the parties are of diverse citizenship, and the domestic-relations exception does not apply. Jurisdiction is secure.

On next steps, the answer or response to the complaint is due on September 5, 2023. The parties shall confer on a proposed discovery schedule and file a status report on September 8, 2023. The tracking status hearing of August 25, 2023, is reset to September 15, 2023, at 8:30 a.m. (but to track the case only, no appearance is required).

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 16, 2023